J. F. CRAWFORD v. L. C. & C. J. PUCKETT.

An instrument of writing conveying a title to slaves in which the grantor uses the expressions, "*give and bequeath*," when followed by a delivery of the property, will be considered a donation *inter vivos*.

Where a father, in the State of Arkansas, made a donation of slaves to "*the heirs of his son*," the son then living and receiving the delivery of the property—*Held*: That it was a valid donation to the minor child of the son, then in existence, who, as presumptive heir, received the benefit of the donation, and that *his* father, acting merely in a fiduciary capacity, could not alienate the property to the prejudice of the rights of his minor child.

In a common law State where slaves are personal property, a gift by parol, followed by delivery, confers a valid title.

APPEAL from the District Court of the Parish of Natchitoches, *Chaplin*, J. J. D. *Watkins*, for plaintiff and appellant. J. G. *Campbell*, for defendant.

VOORHIES, J. The plaintiff, as guardian of the minor children of *William George*, and of his deceased wife, *Frances Yeager*, sets up title to several slaves, in the possession of the defendants and purchased by them from *William George* himself.

The slaves in controversy were formerly the property of *Bazil George*; the father of *William George*; and the former delivered possession of these slaves to the latter, upon execution of the following instrument of writing, to wit :

"December 20th, 1843—Arkansas State, Ouachita county.

"Know all men by these presents, that I, *Bazil George*, of the county and State aforesaid, do this day give and bequeath unto the heirs of *William George*, in the county and State aforesaid, the following negroes, to have and to hold forever, as their property : *Hampton*, 26 years old, and *Esther*, his wife, 20 years old, and *Levy*, their child, six months old—in the presence of the undersigned witnesses. Whereunto I set my hand.

(Signed)                                      " BAZIL GEORGE.

" Witnesses : ABNER YEAGER, M. YEAGER, JOHN STANFORD."

The defendants' counsel contends that this is not a donation *inter vivos*, but a last will and testament, because of the terms used, *give and bequeath*. It is evident, however, that the donor took at the time quite a different view of this matter, for not only was the deed followed by a delivery of the property donated, but the deed itself was thereupon recorded in accordance with the laws of Arkansas, with regard to acts *inter vivos*.

It is further contended, that this deed of gift is null and void, on account of uncertainty as to those who are the grantees ; and also because the pretended donees were not *in esse* at the time of its execution.

The last objection is met with the fact, which appears upon record, that one of the minors, represented in this case, was living at the time of the execution of the deed. So that, however, invalid as to the others the gift may have been for want of parties, it had the desired effect, by vesting the whole title in the donee then in existence. It did not behoove the defendants' vendor, *William George*, to avail himself of this defect, as he was acting merely in a fiduciary capacity, and the defendants themselves cannot now claim any better right than their vendor.

As *William George* had at the time a child, who was his presumptive heir,

and as the slave was delivered to the former for the purpose of possessing it for the benefit of his heirs, it is not conceived in what respect there is any uncertainty as to the parties intended to be the recipients of the donor's liberality. The only possible uncertainty was, whether the gift was made simply to the living child of *William George*, or to all his children, born and unborn; but as the law discountenances dispositions of the latter character, we must conclude that the donor meant the living heir or child. It is true, that *nemo est hæres viventis;* but "he who is the nearest relation to the deceased, capable of inheriting, is presumed to be the heir, and is called presumptive heir. This quality is given to him before the decease of the person from whom he is to inherit, as well as after the opening of the succession, until he has accepted or renounced it." C. C. 876.

By using the expression *the heirs of William George*, the donor pointed to the children who were his presumptive heirs. No greater certainty can be required in pointing out the parties for whom a liberality is intended. 11 La. 431, *Theall* v. *Theall;* 2 Rob. 438, *Succession of Mary;* 3 An. 494, *Fisk* v. *Fisk;* 17 La. *Milne* v. *Milne.*

Besides, slaves being considered in the common law States as personal property, may be given by parol. We must, therefore, suppose that the title of the minor was perfected by the delivery. *William George*, having accepted the delivery of the slaves for the benefit of his heirs, could not be permitted to allege the nullity of the act, so as to deprive them of property delivered and entrusted to him for their benefit.

The plaintiff, in his representative capacity, is entitled to recover the slaves in question, together with the value of their services, since the institution of this suit, to wit, from the 8th day of September, 1857. The value of the services of the boy *Hampton*, is shown to be worth twelve dollars per month, and those of the negro woman *Esther*, four dollars per month; but on the other hand, it appears that the services for keeping and raising the children, are worth the sum of four dollars per month.

The defendants are entitled to recover from their warrantor, *William George*, the amount of the purchase money; a restitution of the fruits which were awarded to the plaintiffs; and such damages as may be proven, together with costs. C. C. 2482.

It is, therefore, ordered and decreed, that the judgment of the court below be avoided and reversed; that the plaintiff do have judgment against the defendants for the slaves *Hampton* and *Esther*, with their increase, to wit, *Felix*, *Faling*, *Mary*, *Minerva*, *Margaret*, *Levy* and *Sabia;* that the defendants do pay to the said plaintiff, the hire of these slaves, at the rate of one hundred and forty-four dollars per annum, from the 8th day of September, A. D. 1857, eighteen hundred and fifty-seven, until delivery of possession of said slaves to said plaintiff. It is further ordered, that the defendants do have judgment against *William George*, for the sum of two thousand dollars, with legal interest from the 18th day of November, A. D. 1850, until paid; and that they do further recover of him the amount decreed to be paid by them to the plaintiff for the hire of the slaves; the appellees paying the costs of appeal.